IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORTHLAND INSURANCE CO. and NORTHLAND CASUALTY CO, | ) ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 12 C 5525 |
| | ) | |
| BARNHART CRANE & RIGGING CO., DIAMOND RING SPECIALIZED, LLC, and JEFF KERN, | ) ) ) | Hon. Virginia M. Kendall |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute regarding an insurer's duty under a commercial general liability ("CGL") policy and a motor carrier policy to defend and indemnify defendants in an underlying personal injury case. Jeff Kern ("Kern") filed a personal injury lawsuit (the "Underlying Action") against defendants Barnhart Crane & Rigging Co. ("BCR"), Diamond Ring Specialized, LLC ("Diamond"), Nelson Manufacturing Co., and All-State Dynamic, LLC for injuries he allegedly sustained while transporting a crane girder. Plaintiffs Northland Insurance Co. ("NIC") and Northland Casualty Co. ("NCC") insure Diamond under a Commercial Insurance Policy and filed the instant suit against BCR and Diamond seeking the declaratory judgment that they are not obligated to defend or indemnify either in the Underlying Action. BCR filed a counter-claim against NIC and NCC for the opposite declaration. In its pleadings, BCR subsequently conceded its claim that Kern's NCC policy requires NCC to defend and indemnify BCR in the Underlying Action. (Defendants' Memorandum of Law Opposing Plaintiffs' Motion for Summary Judgment at ¶ 20.) The parties filed cross-motions for summary judgment on the issues. For the reasons stated below, the Court grants NIC's motion and holds that it has no duty to defend or indemnify BCR and Diamond in the Underlying

Action; and therefore denies the opposite motion.

## BACKGROUND[1]

### I.    The Underlying Action

On March 31, 2012, Kern filed a lawsuit in the Circuit Court of Cook County naming BCR, Diamond, and two other parties as defendants. (*BCR v. NIC* 56.1 Resp. ¶ 8.) The claims against BCR and Diamond in the Underlying Action are identical and stem from alleged injuries Kern sustained on June 2, 2011 during the movement of a crane girder. (*BCR v. NIC* 56.1 Resp. ¶ 9; *NIC v. BCR* 56.1 Resp. ¶ 10.) The crane girder was transported by a dolly/trailer system owned by BCR, which was pulled by a tractor and driver BCR leased from Diamond. (*NIC v. BCR* 56.1 Resp. ¶ 10.) Kern's injury allegedly occurred when the tractor pulled the dolly/trailer system forward and ran him over, severing his leg. (*NIC v. BCR* 56.1 Resp. ¶ 11.) Diamond leased the tractor, a 2000 Peterbilt, and a driver to BCR pursuant to a written lease in February 2011. (*BCR v. NIC* 56.1 Resp. ¶ 10; *NIC v. BCR* 56.1 Resp. ¶ 14.) At the time of the Kern incident, neither the tractor nor the dolly/trailer components involved in the incident were leased to or hired by Diamond. (*NIC v. BCR* 56.1 Resp. ¶ 22.) The trip that was underway when Kern was injured was done under BCR's operating authority. (*NIC v. BCR* 56.1 Resp. Add. Facts ¶ 5.)

_____

[1] This statement lists the facts material to the Court's analysis. It does not list every undisputed fact that appears in the parties' Rule 56.1 statements of undisputed material facts. In the interests of brevity, where the response to one party's Rule 56.1 statement establishes an undisputed fact, the response to the cross-moving party's Rule 56.1 statement establishing that same fact is not cited. Throughout this opinion, the Court cites the parties' Rule 56.1 statements as follows:

1. NIC's Response to BCR's Statement of Material Facts [Doc. 68] is (*BCR v. NIC* 56.1 Resp. ¶ __);
2. BCR's Response to NIC's Statement of Material Facts [Doc. 72] is (*NIC v. BCR* 56.1 Resp. ¶ __);
3. NIC's Response to BCR's Statement of Additional Material Facts [Doc. 76] is (*BCR v. NIC* 56.1 Resp. Add. Facts ¶ __);
4. BCR's Response to NIC's Statement of Additional Material Facts [Doc. 78] is (*NIC v. BCR* 56.1 Resp. Add. Facts ¶ __).

## II. The Documents at Issue

Three documents govern the present issue: (1) a lease agreement between Diamond and BCR, (2) Diamond's insurance policy from NIC, and (3) BCR's insurance policy from Amerisure.

### A. BCR's Independent Contractor Owner Operator Agreement with Diamond

Barnhart's leasing of the tractor and driver from Diamond was subject to a written agreement executed on February 7, 2011. (*BCR v. NIC* 56.1 Resp. Add. Facts ¶ 2.) The Lease states that, "Diamond Ring Specialized (hereinafter called INDEPENDENT CONTRACTOR) agrees to provide independent contract transportation services as an Owner/Operator to Barnhart Crane And Rigging Co. (hereinafter called BCR)." (*BCR v. NIC* 56.1 Resp. Add. Facts ¶ 3.) Regarding personnel, Section 12 of the Lease provides that, "Independent Contractor shall operate equipment covered by this agreement or shall furnish sufficient drivers to operate said equipment. Any drivers furnished by Independent Contractor [Diamond] shall be his employees or agents and shall be hired, directed, paid, controlled and discharged by Independent Contractor [Diamond]." (*BCR v. NIC* 56.1 Resp. Add. Facts ¶ 4.) Section 13 further states that, "It is agreed by the parties hereto that Independent Contractor [Diamond] assumes full and complete responsibility for all employees employed by him/it in the performance of all duties and obligations under this Agreement." (*BCR v. NIC* 56.1 Resp. Add. Facts ¶ 5.)

BCR received the equipment on February 7, 2011. (*BCR v. NIC* 56.1 Resp. Add. Facts ¶ 2.) Under Section 11 of the Lease, "It is the intent of both parties to comply with [Federal Highway Administration] regulations. Pursuant to said regulations, BCR shall have exclusive possession, control, and use of the equipment covered hereby and assumes complete

responsibility for operation thereof under this Agreement to the public." (*NIC v. BCR* 56.1 Resp. Add. Facts ¶ 3.) It also states that:

> Nothing in the provisions required by 49 C.F.R. 376.12(c)(1) is intended to affect whether an independent contractor or any driver provided by an independent contractor is an independent contractor or employee of BCR. It is agreed by the parties hereto that BCR has no right to and will not control the manner nor prescribe the method of doing that portion of the operation which is contracted for in this Agreement by Independent Contractor, except such control as can reasonably be construed to be required by said regulations.

(Lease, Schedule A at § 11, admitted by *NIC v. BCR* 56.1 Resp. Add. Facts ¶ 2.) 49 C.F.R. § 376.12(c)(1) states: "The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease."

The Lease also requires BCR to insure the equipment, stating:

> In accordance with applicable [Federal Highway Administration] rules and regulations, it shall be BCR's responsibility to provide public liability, property damage and cargo loss and damage insurance for the Equipment at all times while the Equipment is being operated on behalf of BCR provided, however, that Independent Contractor shall be charged back, up to $1,000 for any cargo claim, and up to $1,000 for any liability claim, to be deducted from Independent Contractor's compensation.

(*NIC v. BCR* 56.1 Resp. Add. Facts ¶ 4.) BCR added the vehicle involved in the Underlying Action and its driver, Brett Bernard, to its Amerisure commercial automobile insurance policy on February 10, 2011, three days after signing the Lease. (*NIC v. BCR* 56.1 Resp. Add. Facts ¶¶ 6–7.)

**B.    Diamond's NIC Insurance Policy**

NIC issued an insurance policy to Diamond for the period of November 10, 2010 to November 19, 2011 (the "Policy").  (*BCR v. NIC* 56.1 Resp. ¶ 22.)  The Policy contains two provisions that could possibly give rise to a requirement that NIC provide coverage to BCR and Diamond in the Underlying Action.

**1.    Commercial General Liability Coverage Form**

The Commercial General Liability Coverage Form ("CGLC") states that:

> [NIC] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(*NIC v. BCR* 56.1 Resp. ¶ 33.)  It defines "you" and "your" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy" and "insured" as "any person or organization qualifying as such under Section II – Who Is An Insured."  (*NIC v. BCR* 56.1 Resp. ¶ 33.)  The CGLC excludes coverage for

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading."
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.

(*NIC v. BCR* 56.1 Resp. ¶ 34.)  An "auto" is a "land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment."  (*NIC v. BCR* 56.1 Resp. ¶ 35.)  "Bodily injury" is "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  (Doc. 33, page 85 of 135, admitted via *BCR v. NIC* 56.1 Resp. ¶ 22.)

The CGLC also has an endorsement designating BCR as an additional insured.  (*NIC v. BCR* 56.1 Resp. ¶ 36.)  The endorsement modifies the "Who is An Insured" section of the CGLC (which is different from the "Who is An Insured" in the Motor Carrier Coverage Form, discussed below) to add that it:

> [I]s amended to include as an additional insured the person(s) or organization(s) shown in [this endorsement's] Schedule, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf . . . [i]n the performance of your ongoing operations . . . .

(*NIC v. BCR* 56.1 Resp. ¶ 36.)  "You" and "your" again refer to Diamond, the Named Insured under the Policy.  (Doc. 33, page 2 of 135, admitted via *BCR v. NIC* 56.1 Resp. ¶ 22.)

### 2.  Motor Carrier Coverage Form

The "Liability Coverage" section of the Motor Carrier Coverage Form ("MCCF") states, in pertinent part, that "[NIC] will pay all sums an 'insured' legally must pay as damage because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"  (*BCR v. NIC* 56.1 Resp. ¶ 25.)  Diamond purchased insurance for "covered 'autos'" as defined by Symbol 67 and 68 in Section I of the Policy.  (*BCR v. NIC* 56.1 Resp. ¶ 26.)  Symbol 67 describes "Specifically Described 'Autos'," which are, "Only those 'autos' described in Item Three of the Declarations

for which a premium charge is shown (and for Liability Coverage any 'trailers' you don't own while attached to any power unit described in Item Three)." (*BCR v. NIC* 56.1 Resp. ¶ 27.) The Peterbilt was listed as a Specifically Described "Auto" as of November 19, 2010 but was removed on February 9, 2011. (*BCR v. NIC* 56.1 Resp. ¶¶ 30, 32) The dolly/trailer system was not listed as a Specifically Described "Auto" as of June 2, 2011, the date of the Kern incident. (*NIC v. BCR* 56.1 Resp. ¶ 21.)

Symbol 68 defines "Hired 'Autos' Only" as "Only those 'autos' you lease, hire, rent or borrow. This does not include any 'private passenger type auto' you lease, hire, rent or borrow from any member of your household, any of your 'employees', partners (if you are a partnership) members (if you are a limited liability company), or agents or members of their households." (*BCR v. NIC* 56.1 Resp. ¶ 27.) The Policy defines "auto" as a "land motor vehicle, 'trailer' or semitrailer designed for travel on public roads," and "trailer" as "includ[ing] a semitrailer or a dolly used to convert a semitrailer into a trailer." (*BCR v. NIC* 56.1 Resp. ¶¶ 28–29.)

The "Liability Coverage" section of the MCCF outlines who is covered under that portion of the Policy. "Who is An Insured" includes "a. You for any covered 'auto.'" (*BCR v. NIC* 56.1 Resp. ¶ 24.) Diamond is the Named Insured referred to as "You" or "you." (Doc. 33, page 2 of 135, admitted via *BCR v. NIC* 56.1 Resp. ¶ 22.) "Who is An Insured" also includes "Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability." (*BCR v. NIC* 56.1 Resp. ¶ 24.) "However, none of the following is an 'insured': (1) Any 'motor carrier' for hire or his or her agents or 'employees', other than you and your 'employees': . . . (b) If the 'motor carrier' is not insured for hired 'autos' under an 'auto' liability insurance form that insures on a primary basis the owners of the 'autos' and their agents and 'employees' while the 'autos' are leased to that 'motor carrier' and used in his or her business."

(*NIC v. BCR* 56.1 Resp. ¶ 28.)  It goes on to say, "However, Paragraph (1) above does not apply if you have leased an 'auto' to the for-hire 'motor carrier' under a written lease agreement in which you have held the 'motor carrier' harmless."  (*NIC v. BCR* 56.1 Resp. ¶ 28.)  A "motor carrier" is "a person or organization providing transportation by 'auto' in the furtherance of a commercial enterprise."  (Doc. 33, page 49 of 135, admitted via *BCR v. NIC* 56.1 Resp. ¶ 22.)

The Policy also includes a form TL-164 Additional Insured endorsement (the "TL-164") naming Barnhart as an additional insured effective as of November 19, 2010.  (*BCR v. NIC* 56.1 Resp. ¶ 22.)  The TL-164 endorsement modifies the Motor Carrier Coverage Form to identify BCR as an "insured," but "only to the extent that person or organization qualifies as an 'insured' under the Who is An Insured Provision contained in Section II of the Coverage Form."  (*NIC v. BCR* 56.1 Resp. ¶ 25.)

Finally, in the "Policy Changes – Additional Conditions" amendment to the Motor Carrier Coverage Form, the "Conformity to Statute" provision states: "Terms of your policy which are in conflict with the statutes of the state in which the policy is issued are hereby amended to conform with such statutes."  (Docket 33, page 56 of 135, admitted via *BCR v. NIC* 56.1 Resp. ¶ 22.)

### C.     BCR's Amerisure Insurance Policy

BCR produced a copy of its commercial automobile insurance policy with Amerisure ("Amerisure Policy").[2]  (Doc. 69-4 through 69-8, admitted by *NIC v. BCR* 56.1 Resp. Add. Facts

_____

[2] BCR responds to NIC's statements regarding the Amerisure Policy by labeling them "legal conclusion[s] about insurance coverage under Amerisure's policy" and moving to strike them.  (*NIC v. BCR* 56.1 Resp. Add. Facts ¶¶ 7– 8, 10, 11.)  The Court denies these motions to strike with regard to paragraphs 7, 8, and 10 because NIC merely cites portions of the document without drawing any conclusions based on them, in compliance with Local Rule 56.1. (*NIC v. BCR* 56.1 Resp. Add. Facts ¶¶ 7–8, 10.)  However, the Court grants BCR's motion to strike paragraph 11 because it draws a legal conclusion regarding the scope of the Amerisure Policy, that it "does not provide coverage

¶ 6.)  The Amerisure Policy defines an "insured" as "You for any auto" and "Anyone else while using with your permission a covered "auto" you own, hire or borrow, except: The owner or anyone else from whom you hire or borrow a covered 'auto.'"  (*NIC v. BCR* 56.1 Resp. Add. Facts ¶ 10.)  "You" is the "Named Insured," which is BCR.  (Doc. 69-4 at p. 9, admitted by *NIC v. BCR* 56.1 Resp. Add. Facts ¶¶ 6, 10).

On February 10, 2011, three days after BCR and Diamond executed the Lease, the Amerisure Policy was amended to add the 2000 Peterbilt truck (VIN number 1XP6D69X9YD610855) and Brett Bernard as "Additional Insureds."  (Doc. 69-8 at pp. 22, 24, admitted by *NIC v. BCR* 56.1 Resp. Add. Facts ¶¶ 6–7.)  The Peterbilt and Mr. Bernard are respectively the tractor and driver BCR leased from Diamond allegedly involved in the injuries giving rise to the Underlying Action.  (*NIC v. BCR* 56.1 Resp. Add. Facts ¶ 7.)  The addition of the Peterbilt and Mr. Bernard included a "Lessor – Additional Insured and Loss Payee" endorsement that modifies the Amerisure Policy's "Who is An Insured" as follows:

> For a "leased auto" designated or described in the Schedule, Who Is An Insured Is changed to include as an "insured" the lessor named in the Schedule.  However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:
>    a.  You;
>    b.  Any of your "employees" or agents; or
>    c.  Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

---

for Diamond."  (*NIC v. BCR* 56.1 Resp. Add. Facts ¶ 11.)  N.D. Ill. L.R. 56.1(a) ("The statement [of material facts] . . . shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph.")

(*NIC v. BCR* 56.1 Resp. Add. Facts ¶ 7.)  "Employee" includes a "leased worker," which is "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business."  (Doc. 69-5 at pp. 34–35, admitted by *NIC v. BCR* 56.1 Resp. Add. Facts ¶¶ 6, 10.)  The Amerisure Policy does not define "labor leasing firm."  (*NIC v. BCR* 56.1 Resp. Add. Facts ¶ 10.)  Diamond is not listed by name as an "insured" or anywhere else in the Amerisure Policy.  (*NIC v. BCR* 56.1 Resp. Add. Facts ¶ 8.)  Amerisure is defending BCR in the Underlying Action.  (*NIC v. BCR* 56.1 Resp. Add. Facts ¶ 9.)

## STANDARD OF REVIEW

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion.  *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14 (1986).  However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement."  *Bordelon v. Chicago Sch. Reform Bd. Of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000).  Where a proposed statement of fact is supported by the record and not adequately rebutted by the opposing party, the Court will accept that statement as true for the purposes of summary judgment.  The non-moving party must present more than a "bald assertion of the general truth" in the form of "affidavits that cite

specific concrete facts establishing the existence of the truth of the matter asserted." *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998).

Because the parties agree that Illinois law governs the insurance policies at issue, the Court will apply Illinois law to its analysis. *Auto–Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.") (internal citation and quotation marks omitted). Specifically, the Court will "apply the law that [it] believe[s] the Supreme Court of Illinois would apply if the case were before that tribunal rather than before this court." *Help at Home, Inc. v. Med. Capital*, L.L.C., 260 F.3d 748, 753 (7th Cir. 2001). Under Illinois law, "[t]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1998).

## DISCUSSION

### I.  Duty to Defend

#### A.  Illinois Standard

"Because an insurance policy is a contract, the rules applicable to contract interpretation govern the interpretation of an insurance policy." *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1003 (Ill. 2010); *see also Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 860 N.E.2d 280, 285 (Ill. 2006); *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). The Court's primary function is to determine and give effect to the parties' intent as it is expressed by the contract's language. *Founders*, 930 N.E.2d at 1003; *Nicor*, 860 N.E.2d at 286.

If that language is unambiguous, it will be applied as written, unless doing so contravenes public policy. *Hobbs*, 823 N.E.2d at 564.

Under Illinois law, "to determine whether an insurer's duty to defend has been triggered, a court must compare the allegations in the underlying complaint with the language in the insurance policy." *Lagestee-Mulder, Inc. v. Consolidated Ins. Co.*, 682 F.3d 1054, 1056 (7th Cir. 2012) (citing *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods, Inc.*, 828 N.E.2d 1092, 1098 (Ill. 2005)). The duty to defend is broader than the duty to indemnify because "an insurance company must defend its insured in actions that are even *potentially* within coverage." *Id.* (citing *CMK Development Corp. v. West Bend Mut. Ins. Co.*, 917 N.E.2d 1155, 1163 (Ill. 2009)). It is the factual allegations contained in the underlying complaint that determine whether a duty to defend exists; "if the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent." *Gen. Agents Ins.*, 828 N.E.2d at 1098.

Since the duty defend is broad enough to include claims only potentially within coverage, it must be clear from the face of the underlying complaint that the stated facts do not fall within the policy's coverage. *Lagestee*, 682 F.3d at 1056; *see also Amerisure Mutual Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 815 (7th Cir. 2010). But the duty to defend "should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action," and therefore the underlying complaint's factual allegations are "only important insofar as they point to a theory of recovery." *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 613 (7th Cir. 2010) (quoting *Int'l Ins. Co. v. Rollprint Packaging Prods., Inc.*, 728 N.E.2d 680, 688 (Ill. App. 2000) and *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Center*, 566 F.3d 689,

696 (7th Cir.2009)). According to these standards, the Court considers whether the facts alleged in the Underlying Action point to a theory of recovery that falls within NIC's insurance contract with Diamond.

### B. Commercial General Liability Coverage Form

BCR does not allege that it is covered under the Policy's CGLC coverage, which NIC argues is because both BCR and Diamond are excluded from it due to its "Aircraft, Auto Or Watercraft" exclusion. The CGLC covers "insureds" for defense and damages arising from "bodily injury." But it expressly excludes from this coverage "'*[b]odily injury*' . . . arising out of the ownership, maintenance, use or entrustment to others of *any* . . . '*auto*' . . . owned or operated by or rented or loaned to *any insured* . . . even if the claims against any insured allege negligence in the supervision, hiring, employment, training or monitoring of others." (emphasis added). The CGLC thus excludes from coverage "autos" being used by "insured" that involves "bodily injury." First, the parties agree that the Peterbilt and dolly/trailer are "autos" as defined by the Policy. Second, Diamond is indisputably an "insured" under the CGLC. And although there is disagreement as to whether BCR is an "insured" under the CGLC, the Court need not and does not address this issue because the "Aircraft, Auto Or Watercraft" exclusion would bar coverage even if BCR is an "insured." Third, Kern's complaint in the Underlying Action alleges that he "sustained severe and permanent injuries, both internally and externally" while "transporting a crane girder" using a "certain crane girder transport dolly system" that BCR and Diamond "possessed, operated, managed, maintained and controlled or had a duty to possess, operate, manage, maintain and control." (*BCR v. NIC* 56.1 Resp. ¶ 8.) BCR does not dispute that Kern's allegations against BCR and Diamond in the Underlying Action arise from the use of an auto. *See, e.g.*, *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and

undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ."). Because the "bodily injury" alleged in the Underlying Action arise from "autos" used by "insureds," the Court therefore finds that BCR and Diamond are excluded from the Policy under its CGLC coverage.

### C.     Motor Carrier Coverage Form

#### 1.     NIC Owes No Duty to Defend BCR with Respect to the Underlying Action

NIC argues that BCR is not covered under the MCCF because it is "motor carrier" that is expressly excluded from the definition of an "insured." Specifically, NIC contends that BCR is not an "insured" because it does not provide reciprocal insurance to Diamond for the Peterbilt as is required of "motor carriers" under the MCCF. BCR's counterarguments are that: (1) the TL-164 endorsement to the MCCF states that BCR is an "additional insured," (2) being an "additional insured" under the TL-164 endorsement required NIC to give BCR notice when the Peterbilt was removed from the Policy in February 2011, and (3) BCR is an "insured" even without the TL-164 endorsement because it is "anyone liable for the conduct of an 'insured' described above but only to the extent of that liability." These arguments are discussed in turn.

First, NIC alleges that the "Who is An Insured" provision in the MCCF excludes from coverage a "'motor carrier' for hire" if that motor carrier "is not insured for hired 'autos' under an 'auto' liability insurance form that insures on a primary basis the owners of the 'autos' and their agents and 'employees' while the 'autos' are leased to that 'motor carrier' and used in his or her business." NIC calls this a "reciprocal coverage provision" in which BCR is required to insure owners of autos it leases, in this case Diamond, if it is to be covered as an "insured" under the MCCF. *See Zurich Am. Ins. Co. v. Key Cartage, Inc.*, 923 N.E.2d 710, 715–16 (Ill. 2009)

(holding that reciprocal coverage provisions do not violate public policy). A "motor carrier" is defined in the MCCF as "a person or organization providing transportation by 'auto' in the furtherance of a commercial enterprise," and BCR admits that it is "in the business of transporting the goods or property of others for compensation and at the time of the KERN incident, BRC was transporting the property of Whiting Corporation." (*NIC v. BCR* 56.1 Resp. ¶ 29.)

The remaining question is whether BCR provides reciprocal coverage to Diamond under the Amerisure Policy such that the MCCF exclusion does not apply. BCR provided an authenticated copy of its commercial automobile insurance policy with Amerisure during discovery. (*NIC v. BCR* 56.1 Resp. Add. Facts ¶ 6.) *See United States v. Brown*, 688 F.2d 1112, 1116 (7th Cir. 1982) (The "very act of production [is] implicit authentication."). The Amerisure policy provides coverage to BCR and "anyone else" using a "covered 'auto' you [BCR] own, rent or borrow, except . . . [t]he owner or anyone else from whom you hire or borrow a covered 'auto.'" BCR does not dispute that the plain reading of this passage excludes Diamond from the definition of an "insured" because it is the "owner . . . from whom" BCR leased the covered autos.[3] Instead, BCR argues that it falls under the exception to the "motor carrier' exclusion that states, "[the 'motor carrier' exclusion] does not apply if you [Diamond] have leased an 'auto' to the for-hire 'motor carrier' under a written lease agreement in which you [Diamond] have held that 'motor carrier' harmless." Section 13 of the Lease contains the following indemnity language:

> "Independent Contractor [Diamond] agrees to defend, indemnify and hold BCR harmless for any claims, suits, or actions, including

---

[3] The Peterbilt and dolly/trailer are "covered autos" under the Amerisure Policy.

> reasonable attorney fees incurred in protecting BCR's interests,
> against any claim brought by Independent Contractor's employees,
> any union, the public, or state or federal agencies, arising out of the
> operation of the Equipment pursuant to this Agreement."

(Lease at § 13, admitted by *NIC v. BCR* 56.1 Resp. Add. Facts ¶ 2.) However, NIC correctly

notes that indemnity agreements in motor carrier transportation contract are "void and

unenforceable" under Illinois law. 625 ILCS § 5/18c-4105; *K. Miller Const. Co. v. McGinnis*,

938 N.E.2d 471, 480 (Ill. 2010). The Court therefore finds that BCR is not an insured covered

by the "Who is An Insured" section of the MCCF.

Second, BCR argues that the TL-164 Policy endorsement naming it an "Additional

Insured" renders it an "insured" under the Policy. The TL-164 endorsement states that BCR is

an "insured" for coverage under the Policy, but "only to the extent that person or organization

qualifies as an 'insured' under the Who is An Insured Provision contained in Section II of the

Coverage Form." As discussed above, however, the "'motor carrier' exclusion" prevents BCR

from being labeled an "insured" under the "Who is An Insured" provision of the MCCF.

Therefore, the Court finds that BCR is not covered under the MCCF via the TL-164

endorsement.

Third, BCR argues that even if it is not itself an "insured" under the MCCF, the Peterbilt

was scheduled as a "specifically described 'auto'" under the Policy but then removed prior to the

accident. It urges that the TL-164 endorsement entitled it to notice of the Peterbilt's removal,

and that NIC's failure to provide notice voids the removal such that it is still required to cover

the Peterbilt.[4] The TL-164 endorsement states, "If we cancel or nonrenew the policy, a copy of

---

[4] Although BCR alleges that it was due notice of the Peterbilt's removal from the Policy, the only possible outcome
of the Court agreeing with its position is that *Diamond*—and not BCR—retains coverage under the Policy. This is

the written notice of cancellation will be mailed by us to that person(s) or organization(s)," and then lists a contact address for BCR several lines below. BCR admits that the Policy was not canceled and that nonrenewal is not an issue in this case because the incident in the Underlying Action took place during the Policy's term. (*NIC v. BCR* 56.1 Resp. Add. Facts ¶ 18.) It argues that it was nevertheless entitled to notice of the Peterbilt's removal because: (1) Illinois law prohibits removal of a motor vehicle from insurance coverage by a motor carrier, (2) removing the Peterbilt "materially diminished" BCR's coverage under the Policy, and (3) NIC gave notice of the Peterbilt's removal to a "loss payee."

The parties do not dispute that the Illinois Commercial Transportation Act ("Transportation Act") governs the motor carrier insurance contracts presently at issue. The Transportation Act regulates insurance for "motor carriers of property." 625 ILCS §§ 5/18c-4901 – 5/18c-4905. BCR argues that reading Sections 5/18c-4901 and 5/18c-4903 together prove that it was required to receive notice of the Peterbilt's deletion under Illinois law. Section 5/18c-4901 is titled "Insurance Coverage as a Prerequisite to Operations" and states: "No motor carrier of property shall operate within this State unless it has on file with the [Illinois Commerce] Commission or its agent proof of continuous insurance or surety coverage *in accordance with Commission regulations*." (emphasis added). Section 5/18c-4903 is titled "Implied Terms of Insurance Coverage" and states, in pertinent part:

> Each . . . proof of insurance . . . coverage shall have, as an implied
> term, that the insurance . . . coverage will remain in effect

---

because BCR is not an "insured" under the MCCF. Be that as it may, this is a distinction without a difference under Illinois law because the complaint in the Underlying Action makes the same allegations against both BCR and Diamond, and once the duty to defend has been triggered under one part of the complaint, it is triggered to all parts. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010) ("If the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy." (citations omitted)).

> continuously *until notice of cancellation is filed in accordance
> with Commission regulations*, and that *all motor vehicles operated
> by or under authority of the carrier will be covered*, whether or not
> such vehicles have been reported to the insurance, surety, or other
> company. Filing proof of insurance with the Commission shall
> constitute acceptance of this implied term, and such acceptance
> may not thereafter be withdrawn except on withdrawal of all proof
> of insurance or surety coverage.

(emphasis added). The thrust of BCR's claim is that § 5/18c-4903 requires that "all motor

vehicles operated by or under the authority of" Diamond "will be covered" "until notice of

cancellation is filed in accordance with Commission regulations." BCR concludes that NIC's

failure to notify BCR that the Peterbilt was removed therefore violates the statute and invalidates

the deletion.

NIC replies that the Peterbilt was not "operated by or under the authority of" Diamond.

According to the Commission's regulations, in any motor carrier lease of equipment, "The lessee

[BCR] shall have exclusive possession and control of leased equipment during all periods when

the equipment is operated under the lease." 92 Ill. Admin. Code § 1360.40(b)(1). This provision

is implied if not stated in the lease, and any contrary provision is void. 92 Ill. Admin. Code §

1360.40(b). The Commission also saw fit to state the same requirement a second time in another

section: "The lessee of equipment used under authority of a license issued by the Commission

shall have exclusive possession and control of the equipment while it is so used. Failure to

exercise supervision and control of the equipment constitutes an illegal transfer of

authority . . . ." 92 Ill. Admin. Code § 1360.55. The statutes BCR cites are both qualified with

the phrase "in accordance with Commission regulations," and Commission regulations require

that the lessee—BCR—has exclusive possession and control of the leased vehicle, the Peterbilt.

The Court therefore finds that the Peterbilt was not "operated by or under the authority of"

Diamond under § 5/18c-4903, and that its notice requirement does not apply to NIC's deletion of the Peterbilt from the Policy.

NIC further counters that BCR's argument is incomplete because it fails to consider § 5/18c-4902, titled, "Commission to Set Insurance Coverage Limits and Establish Procedures," which states:

> The Commission shall prescribe the amounts of insurance or surety coverage required as a minimum, the maximum allowable deductible limits, procedures for the filing and rejection or return of filings, and such other reasonable regulations regarding insurance or surety coverage as are necessary to protect the travelling and shipping or receiving public.

Because the Commission prescribes the coverage required, NIC argues that its regulations regarding insurance must also be considered.[5]   Regulations promulgated by the Commission have the force and effect of statutes.  *See, e.g.*, *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 432 N.E.2d 849, 851 (Ill. 1982).  The Commission requires that motor carrier equipment leases include a "supplemental insurance coverage" term: "The lease must specify which party is responsible for securing and paying for, either directly or indirectly, any other insurance or surety coverage in addition to amounts required by [625 ILCS 5/18c-4401 to 18c-4905] or 92 Ill. Adm. Code 1425."  92 Ill. Admin. Code § 1360.40(a)(5).  It also states that: "The following terms, if not stated in a lease, shall be implied.  Any contrary provisions in the lease shall be void. . . . The lessee [BCR] shall have the responsibility for securing insurance or surety coverage in compliance with Sub-chapter 4 of the Law and 92 Ill. Adm. Code 1425." 92 Ill.

---

[5] Section 92 Ill. Admin. Code § 1360.10(b)(2) states, "This Part [the Commission's Regulation of Motor Carrier Equipment Leases] does not apply to the . . . leasing of equipment for use in interstate commerce."  However, the parties do not argue or provide any evidence that the Lease of the Peterbilt was "for use in interstate commerce."  Although the Lease was signed in and governed by the laws of Tennessee, nothing within its text indicates that the use of the Peterbilt would be used anywhere other than Illinois, the state in which BCR received the Peterbilt on February 2, 2011.  (Lease at ¶ 5, admitted by *NIC v. BCR* 56.1 Resp. Add. Facts ¶ 2.)

Admin. Code § 1360.40(b)(2). NIC argues that notice was therefore not required because Illinois law requires BCR—not Diamond—to insure the Peterbilt.

Even if BCR did not receive notice of the Peterbilt's removal from the Policy, it did appear to fully understand its obligations to insure the tractor on its own. In compliance with Illinois law, the Lease requires BCR to obtain insurance coverage for the Peterbilt. (*NIC v. BCR* 56.1 Resp. Add. Facts ¶ 4.) The parties subsequently followed through with the terms of the Lease when Diamond removed the Peterbilt from the Policy's "Specifically Described 'Auto'" schedule on February 9, 2011, and BCR added the it and its driver to BCR's Amerisure Policy on February 10, 2011.

BCR then argues that removal of the Peterbilt required notice because it "materially diminished" BCR's coverage under the Policy. The only case BCR cites for this argument is *Guillen ex rel. Guillen v. Potomac Ins. Co. of Ill.*, 785 N.E.2d 1 (Ill. 2003). There, Guillen was injured because her apartment was coated with lead paint. *Id.* at 143. She sued her landlords, who subsequently tendered the claim to Potomac, their insurance company. *Id.* Potomac refused to defend or indemnify the landlords and did not participate in the lawsuit because it allegedly added a "lead exclusion" to the landlords' policy. *Id.* Guillen settled with the landlords shortly thereafter, but the landlords conditioned payment of the settlement amount on their right to payment from Potomac. *Id.* Guillen sued Potomac for a declaratory judgment that it was required to pay the settlement amount because, among other reasons, it did not comply with the Illinois statutory notice requirements governing the addition of the lead exclusion. *Id.* at 144–45 (citing 215 ILCS § 5/143.17a(b)). In holding that Potomac the lead exclusion modification was invalid because Potomac failed to provide "proof of mailing" that it notified Guillen of the

change, the court stated that, "[it] has previously recognized the importance of the insurer's obligation to provide notice to its insured of changes that materially diminish insurance coverage." *Id.* at 10.

BCR argues *Guillen* is evidence that BCR was entitled to notice that the Peterbilt was removed from Diamond's insurance policy. Yet, *Guillen* defines a "material modification" of an insurance policy as "one that makes significant changes to that policy," and that a "material alteration of an insurance policy is an important transaction that may have a serious effect on the interests of the insured." *Id.* at 9. The *Guillen* court found that an insurance company adding a provision that excludes injuries related to lead poisoning was "material" because it left her uninsured for her lead poisoning injuries, and that such a change was subject to the "proof of mailing" requirement in 215 ILCS § 5/143.17a(a), (b). *Id. Guillen* differs significantly from the present situation. Here, BCR leased the Peterbilt from Diamond and subsequently added it to BCR's own motor carrier insurance policy with Amerisure because it was required to do so by Illinois law. Illinois requires BCR to "possess" and insure tractors it leases "to prevent licensed carriers from escaping liability to injured members of the public by claiming that their lessor-drivers were independent contractors rather than employees." *St. Paul Fire & Marine Ins. Co. v. Frankart*, 370 N.E.2d 1058, 1060 (Ill. 1977). Even if deleting the Peterbilt from the Policy "materially *modified*" BCR's rights under that policy, it did not "materially *alter*" BCR's interests because it was required to insure the Peterbilt under Illinois law, thereby ensuring continuity of insurance coverage. The Court therefore rejects BCR's argument that deleting the Peterbilt from the Policy "materially diminished" its rights requiring notification under Illinois law.

BCR contends that it was entitled to notification because a "loss payee" to the Policy, Commercial Credit Group Inc ("CCG"), received notice of the Peterbilt's deletion. But BCR does not point to any part of the Policy stating that its rights as an "additional insured" under the TL-164 are the same as CCG's as a "loss payee." In fact, their rights are not the same. Subject to certain exceptions, BCR's "additional insured" endorsement entitles it to all the same coverage as the "named insured," Diamond, for all the same autos as Diamond. This coverage includes damages for "bodily injury" and the duty to defend. In contrast, CCG's coverage as a "loss payee" is limited to "loss" for only the autos listed in its endorsement, where "loss" is "direct and accidental loss or damage." (Doc. 33, page 48 of 135, admitted via *BCR v. NIC* 56.1 Resp. ¶ 22.) CCG's rights as a "loss payee" are far narrower than BCR's as an "additional insured" – if only one vehicle were listed for CCG, removing that vehicle from the overall Policy would effectively cancel CCG's coverage. *See Posner v. Firemen's Ins. Co.*, 199 N.E.2d 44, 48 (Ill. App. Ct. 1964) ("[A] loss payee's rights are subject to every act or omission of the insured which would prevent the insured from collecting under the policy."). This is likely the reason that the "Illinois Changes – Cancellation and Nonrenewal" endorsement adds the additional protection of a notice requirement for a "loss payee" in the event of cancellation, which combined with the provision in the "loss payee" endorsement leaves no doubt that notice must be provided. (Docket 33, page 63 of 135, admitted via *BCR v. NIC* 56.1 Resp. ¶ 22.) Because the rights of CCG as a "loss payee" differ substantially from BCR's as an "additional insured," the Court is not persuaded that BCR not receiving the same notice as CCG invalidates the Peterbilt's deletion as to BCR.

Third, BCR argues that it falls within the "Who is An Insured" provision as "e. Anyone liable for the *conduct* of an 'insured' [Diamond] described above but only to the extent of that liability." It cites as evidence its admission that, "The shipment which was underway way the time of the incident alleged in the Underlying Complaint was done under the operating authority of Barnhart." Yet, the very evidence BCR cites, that it had "operating authority" over the shipment, is proof that the conduct was BCR's, not Diamond's. This evidence also serves to undermine BCR's arguments below that Diamond "borrowed" the dolly/trailer from BCR because it is implausible that Diamond could "borrow" something over which it did not have "operating authority."

For these reasons, the Court finds that NIC has no duty to defend BCR in the Underlying Action pursuant to the MCCF.

### 2. NIC Owes No Duty to Defend Diamond with Respect to the Underlying Action

BCR's final argument is that NIC owes Diamond a duty to defend in the Underlying Action because Diamond "borrowed" the dolly carrying the crane girder from BCR, rendering it a Hired "Auto" as defined by and covered under the MCCF.[6] The MCCF covers "hired 'autos'," which are "only those 'autos' you [Diamond] lease, hire, rent or borrow."[7] Thus, BCR argues, Diamond is covered if the Peterbilt or dolly/trailer are "autos" it leases, hires, rents, or borrows.

---

[6] That BCR makes this argument is surprising because Diamond admits in its Response to NIC's First Set of Requests to Admit that, "On June 2, 20122, the tractor and trailer involved in the Incident alleged in the Kern Complaint [Underlying Action] were not borrowed by Diamond." (Doc. 55-3, p. 4.) Frank Dottore, the President of Diamond Ring Specialized, LLC signed the admission on November 12, 2012. (*Id.* at p. 5.)

[7] One plausible reading of this sentence would insure "autos" that Diamond *leases to* another party. However, the parties do not argue this point. Even if they had, the next sentence suggests that *leases from* is the proper interpretation: "This does not include any 'private passenger type' 'auto' you lease, hire, rent or borrow *from* any member of your household, any of your 'employees', partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their households." (*BCR v. NIC* 56.1 Resp. ¶ 27.)

An "auto" is a "land motor vehicle, 'trailer' or semitrailer designed for travel on public roads," and a "'trailer' includes a semitrailer or a dolly used to convert a semitrailer into a trailer." The parties do not dispute that Diamond did not lease, hire, or rent the Peterbilt or dolly/trailer. Rather, BCR alleges Diamond "borrowed" the dolly/trailer from BCR. The Policy does not define "borrow," so the Court looks to Illinois law for its meaning.

The interpretation of an insurance policy is an appropriate question for a court to answer on a motion for summary judgment. *See Conn. Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 349 (7th Cir. 2003) (citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993)). Policy provisions limiting an insurer's liability will be construed liberally in favor of coverage when those provisions are ambiguous, but a disagreement between the parties as to a provision's meaning does not create ambiguity. *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007). The Court will consider "only reasonable interpretations" of the policy and will not strain to find ambiguity where none exists. *Id.*

BCR cites three Illinois cases that examine the meaning of "borrow." The first is *Home Ins. Co. v. U.S. Fid. & Guar. Co.*, 755 N.E.2d 122 (Ill. App. Ct. 2001). The *Home* court considered a declaratory judgment filed by Home Insurance Company ("Home") seeking a declaration that another insurance company, United States Fidelity and Guaranty Company ("USF&G") had a duty to defend Prestess Engineering Corporation ("PEC") in a wrongful death action. *Id.* at 124. In the wrongful death action, PEC was allegedly hired to manufacture and deliver concrete beams for use in constructing a bridge. *Id.* at 125. PEC subsequently hired "A&M Cartage of Tinley Park, Inc. 'and/or' Tri Sons Transportation, Inc." ("Tractor Lessors") to supply tractors and drivers to deliver the beams, who in turn hired Transmedical, Inc.

("Transmedical") to supply the drivers. *Id.* The wrongful death action alleged that Transmedical's driver was killed when the concrete beam dislodged from PEC's trailer and crashed into the operator's cab of the Tractor Lessor's tractor. *Id.* Home insured PEC, while USF&G insured the Tractor Lessors. *Id.* at 126. The *Home* court considered whether USF&G had a duty to defend PEC in the wrongful death action where PEC was not expressly identified as a named or additional insured in the Tractor Lessor's USF&G insurance policy. *Id.* at 126–27. The USF&G policy defined an "insured" as "The owner or anyone else from whom you [Tractor Lessors] *hire or borrow* a covered 'auto' that is a 'trailer' while the 'trailer' is connected to another covered 'auto' that is a power unit . . . ." *Id.* The *Home* court defined "borrow" as "to solicit and receive from another any article of property, money or thing of value with the intention and promise to repay or return it or its equivalent." *Id.* at 130 (quoting *Brile for Brile v. Estate of Brile*, 695 N.E.2d 1309, 1313 (Ill. App. Ct. 1998)). The court held that USF&G had a duty to defend PEC in the wrongful death action by concluding that the Tractor Lessors received a "thing of value" because they "used PEC's trailer to haul the concrete beam to the jobsite." *Id.* at 130, 136.

The second case BCR cites is *Brile*, 695 N.E.2d 1309 (Ill. App. Ct. 1998), the case *Home* cited to define "borrow." In *Brile*, an employer asked an employee to relocate from its Illinois office to its Colorado office. *Id.* at 1310. As part of the request, the employer offered to pay to move the employee's personal belongings if the employee also moved items from the Illinois office. *Id.* at 1311. The employee agreed and subsequently rented a truck and began the relocation. *Id.* As the employee was driving himself, his son, his personal belongings, and the employer's office materials to Colorado, he was involved in an accident that killed both him and his son. *Id.* The *Brile* court found that the employer had "borrowed" the rental truck for the

purposes of being covered under the employer's insurance contract because the employer "received a thing of value in that it obtained the means to transport its office items and customer files across country in a cheaper and more convenient manner." *Id.* at 1313.

Finally, BCR cites *Metzger v. Country Mut. Ins. Co.*, 986 N.E.2d 756 (Ill. App. Ct. 2013). There, plaintiff was involved in a car accident with Brian McKee, then the vice-president of McKee Custom Masonry. *Id.* at 758. McKee Custom Masonry had an insurance policy with the defendant that provided liability coverage, including a duty to defend, for any "non-owned" vehicle operated in the business. *Id.* at 759. A "non-owned" auto is "any 'auto' you [McKee Custom Masonry] do not own, lease, hire or borrow which is used in connection with your business." *Id.* at 762. Plaintiff sued for a declaratory judgment that the insurance policy covered the vehicle involved in the accident. *Id.* The court defined "borrow" as "to take something for temporary use" or "receive temporarily from another, implying or expressing the intention either of returning the thing received or of giving its equivalent to the lender: obtain the temporary use of." *Id.* (citing Black's Law Dictionary 178 (7th ed. 1999) and Webster's Third New International Dictionary 256 (1993), respectively). In holding that the vehicle involved in the accident was not covered by the defendant's insurance policy and that there was no corresponding duty to defend, the court found that McKee Custom Masonry "borrowed" the vehicle from McKee and was therefore not a "non-owned" auto. *Id.* at 763.

NIC argues, and the Court agrees, that the definitions of "borrow" in these three cases each have an element of receipt or possession of property. *Home*, 755 N.E.2d at 130 ("[T]o solicit and *receive* from another any article of property . . . ." (quoting *Brile*, 695 N.E.2d at 1313) (emphasis added)); *Metzger*, 986 N.E.2d at 763 ("[B]orrow is to *take something* for temporary

26

use or *to receive* temporarily from another . . . [or] obtain the temporary *use* of." (emphasis added)).  Merriam Webster's Collegiate Dictionary 975 (10th ed. 1996) defines "receive" as "to come into possession of."  All of Federal law, Illinois law, and the Lease itself require BCR to maintain "exclusive possession" and "control" over the Peterbilt and its driver, and BCR has failed to explain how Diamond could "borrow" the dolly/trailer while BCR possesses and controls the tractor pulling it.

The Court first addresses possession and control with regard to the Peterbilt and driver. The Lease itself states, "It is the intent of both parties to comply with [Federal Highway Administration] regulations."  Federal regulations require that, "The lease shall provide that the authorized carrier lessee [BCR] shall have exclusive *possession, control, and use* of the equipment for the duration of the lease.  The lease shall further provide that the authorized carrier lessee [BCR] shall assume complete responsibility for the operation of the equipment for the duration of the lease."  49 C.F.R. § 376.12(c)(1) (emphasis added).  Under Illinois regulations, as discussed above, require the lessee to "have *exclusive possession and control*" of leased equipment.  92 Ill. Admin. Code §§ 1360.40(b)(1), 1360.55 (emphasis added).  The regulations add that any lease provisions contrary to this requirement are void, and any failure by a lessee to exercise this exclusive possession and control "constitutes illegal transfer of authority."  92 Ill. Admin. Code § 1360.40(b)(1), 1360.55 (emphasis added).

The Lease complies with both Federal and Illinois law: "BCR shall have *exclusive possession, control*, and use of the equipment covered hereby [the Peterbilt] and assumes complete responsibility for operation thereof under this Agreement to the public." (emphasis added).  BCR cannot argue that any of the Lease provisions suggest that BCR did not have exclusive possession and control of the Peterbilt because any such provisions are void under

Illinois law.  The Court therefore finds, as a matter of law, that the Peterbilt and its driver were operating under BCR's control.  Because Diamond did not control or possess the Peterbilt or its driver, it could not have controlled or possessed the dolly/trailer the Peterbilt pulled.  As such, the Court finds Diamond did not "borrow" the dolly/trailer and is therefore not covered under the Policy's MCCF provision.

For the avoidance of doubt, the Court's determination that BCR had legal possession and control over the Peterbilt and its driver such that Diamond could not possibly have borrowed the dolly/trailer from BCR does not resolve any factual issues regarding liability that may be pending in state court.

## II.    Duty to Indemnify

"An insurer's duty to defend its insured is broader than its duty to indemnify.  If an insurer has no duty to defend, it has no duty to indemnify."  *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010).  Because the Court has found that NIC has no duty to defend BCR or Diamond in the Underlying Action, it also finds that it has no duty to indemnify either party for any liability that may be assigned them.

## CONCLUSION

For the foregoing reasons, NIC's motion for summary judgment is granted and denies BCR's motion for summary judgment.

_Virginia M. Kendall_

Hon. Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date:  December 30, 2013